Sherie N. Buell
Lee F. Bantle
BANTLE & LEVY LLP
99 Park Avenue, Suite 1510
New York, New York 10016
(212) 228-9666
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

ANITA SHANKAR,

                Plaintiff,

              - against -

ANKURA CONSULTING GROUP, LLC,

                Defendant.

--------------------------------------------------------------------x

No.
ECF Case

**COMPLAINT**
**AND JURY DEMAND**

Plaintiff Anita Shankar, by her attorneys, Bantle & Levy LLP, as and for her complaint against defendant Ankura Consulting Group, LLC, alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for employment discrimination based on sex, race and retaliation for opposing discrimination in the workplace, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), the New York State Human Rights Law, New York Executive Law § 290 et seq., (the "Executive Law"), and the New York City Human Rights Law, New York City Administrative Code § 8-101 et seq. (the "NYCHRL"). Plaintiff seeks declaratory and injunctive relief and damages.

2.     Plaintiff, Anita Shankar ("Shankar"), was subjected to discrimination based on her sex and race, and retaliation for opposing discrimination in the workplace, by defendant Ankura Consulting Group, LLC ("Ankura"), with such discriminatory and retaliatory treatment culminating in the abrupt and unlawful termination of her employment as a Managing Director on July 30, 2019.

## JURISDICTION AND VENUE

3.     The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e et seq., as amended and 28 U.S.C. §§ 1331, 1343(a)(3) and (4).  In addition, plaintiff asserts state and city anti-discrimination law claims under this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

4.     A substantial part of the acts giving rise to this action were committed within the district of the United States District Court, Southern District of New York, and venue is properly lodged in this Court pursuant to 28 U.S.C. § 1391(b).

5.     Plaintiff has mailed a copy of this complaint to the Corporation Counsel for the City of New York and to the New York City Commission on Human Rights as required under New York City Administrative Code, § 8-502.

6.     All conditions precedent to jurisdiction under § 706 of Title VII, 42 U.S.C. § 2000e-5(f)(3) have occurred or been complied with:

a.     A charge of employment discrimination on the basis of sex and retaliation was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the adverse actions of which plaintiff complains in this action;

b.     A notification of right to sue was issued by the EEOC on June 15, 2020;

c. This complaint has been filed within 90 days of plaintiff's receipt of the EEOC's notification of right to sue and less than three years after defendant willfully engaged in the unlawful action set forth herein.

## PARTIES

7. Plaintiff Anita Shankar is a 36-year-old South Asian American woman and a U.S. citizen. Shankar currently resides in New York, New York.

8. Upon information and belief, defendant Ankura Consulting Group, LLC ("Ankura" or the "Company") is a foreign limited liability company with a New York office located at 485 Lexington Avenue, New York, New York 10017.

9. Upon information and belief, Ankura is a professional services firm specializing in reactive event-based consulting services and operates offices throughout the world.

10. At all times relevant herein, Ankura is and was an employer engaged in industry affecting commerce and has employed more than fifteen (15) employees within the meaning of Title VII.

11. At all times relevant herein, Ankura is and was an employer within the meaning of the NYSHRL, N.Y. Exec. L. § 292 and a person within the meaning of § 292(1).

12. Defendant Ankura is a person within the meaning of New York City Administrative Code § 8-102(1), and an employer within the meaning of New York City Administrative Code §§ 8-102(5) and 8-107.

## STATEMENT OF FACTS

Shankar's Background and Employment with Navigant Consulting, Inc.

13. Prior to working for Ankura, Shankar earned a degree in Information Science in 2010 and worked for six years in data analytics and consulting.

3

14.     In 2016, Shankar commenced employment with Navigant Consulting, Inc. ("Navigant") as a Managing Consultant.

15.     As a Managing Consultant for Navigant, Shankar's primary responsibilities included project management, training, performance management, recruiting and coaching.

16.     Shankar performed well in this position and consistently received positive feedback from her supervisors.

17.     Within six months of the start of her employment with Navigant, Shankar was promoted to the position of Associate Director and given a salary increase based on her excellent performance.

Ankura Acquires Part of Navigant, and Shankar Becomes an Ankura Employee

18.     In 2018, Navigant's Disputes, Forensics, and Legal Technology ("DFLT") segment was acquired by Ankura ("the Acquisition").

19.     As a result of the Acquisition, Shankar formally became an employee of Ankura and her title changed from Associate Director to Senior Director.

20.     Notwithstanding her job title change to Senior Director, Shankar's responsibilities remained largely the same.

21.     As a Senior Director for Ankura, Shankar's primary responsibilities included managing complex analytics projects, developing and managing client relationships, performance management, recruitment, and training.

22.     At the time of the Acquisition, Shankar expressed concerns to her direct supervisors about working under Ankura Senior Managing Director, Chris Harvey ("Harvey").

23.     Shankar had previously worked with Harvey at FTI Consulting in Chicago from 2014 to 2016.

4

24.     Shankar left FTI Consulting in 2016 to work for Navigant.

25.     Upon information and belief, Harvey also left FTI Consulting in 2016 and then began working for Ankura.

26.     Immediately following the Acquisition, Shankar advised Rebecca Patterson ("Patterson"), Managing Director, and Jim Vint ("Vint"), Senior Managing Director and Practice Lead, of her professional history with Harvey – i.e., that she had worked on a team led by Harvey from 2014 to 2016 – and informed Patterson and Vint that Harvey had treated her unfairly at FTI and discriminated against her due to her gender.

27.     Specifically, at FTI, Harvey had treated Shankar unfairly as compared to her male counterparts, often being dismissive of her work, minimizing her efforts, and denying her meaningful and substantive supervision.

28.     Moreover, Harvey had fostered a misogynistic culture at FTI in which female employees were often excluded, treating Shankar and other female subordinates with disrespect.

29.     On one occasion, while Shankar was working as the only woman on a team project led by Harvey in 2014, Harvey participated in inappropriate workplace conversation focusing on other women's bodies in front of Shankar.

30.     Specifically, Harvey and other FTI employees cruelly mocked an overweight woman and her use of the turn-style at the entrance to the office building, suggesting that she would not be able to fit through it.

31.     On another occasion, Harvey coordinated a golf outing on a workday for his entire team except for Shankar, the only woman on the team.  Shankar was notified by e-mail that her team members would not be in the office that day, but she was not invited to participate in the outing.

5

32.     On another occasion, Harvey commented that a male employee would not be comfortable being supervised by a female employee.

33.     Throughout Shankar's employment with FTI, Harvey was cordial and respectful toward the male employees, but regularly treated Shankar and other female employees with hostility and aggression.

34.     Shankar chose to leave FTI in large part due to Harvey's discriminatory behavior, and found Navigant to be a more inclusive workplace.

35.     When Shankar learned that she would be working at Ankura with Harvey and expressed her concerns to Patterson and Vint, Patterson and Vint took her out to lunch and reassured her that she was a valuable asset to Ankura and that her contact with Harvey would be limited.

36.     Notwithstanding Shankar's concerns about working with Harvey, Shankar performed well in her position of Senior Director at Ankura and was consistently praised for her performance by Patterson and Vint.

37.     In Shankar's 2018 performance review, Patterson rated Shankar's performance "exemplary" with a score of 4.06 out of 5.

38.     Based on this review, Shankar was given another salary raise and was promoted to the position of Managing Director, effective March 1, 2019.

<u>Chris Harvey and Ankura Discriminate Against Shankar</u>

39.     Beginning in 2019, Harvey's problematic behavior toward Shankar resumed, now at Ankura.

40.     In or about February 2019, Shankar was told by Senior Managing Director, Jonathan Marshall, that despite Shankar having had little to no contact with Harvey from July

6

2016 to February 2019, Harvey had actively campaigned against Shankar's promotion to the position of Managing Director.

41.    Shankar also learned that Harvey had approached Shankar's co-workers asking if they had had any negative experiences with Shankar that he might use to counter her promotion.

42.    Upon information and belief, Harvey had had minimal contact with Shankar at Ankura and therefore had no legitimate reason to interfere in Shankar's promotion.

43.    Despite Harvey's discriminatory campaign, Shankar was promoted to the position of Managing Director, in large part due to the advocacy of Patterson.

44.    Following Shankar's promotion, Harvey's hostility again came to the fore, this time directed toward both Shankar and her female colleague, Patterson, who had recommended Shankar for promotion and often championed Shankar and lauded the contributions she made to the Company.

45.    For example, on several occasions, Harvey deliberately excluded Shankar from relevant e-mails, such as client introductions and e-mails regarding Shankar's mentees.

46.    Harvey also excluded Shankar from relevant meetings, such as business development and training opportunities.

47.    Moreover, on weekly leadership calls moderated by Harvey, he developed a practice of skipping over Shankar and her project updates while inviting everyone else to speak.

48.    On one occasion, in or about June 2019, Harvey called Shankar and berated her for including an innocuous slide about summer interns in a PowerPoint presentation.

49.    After threatening to report Shankar, Harvey hung up the phone on her.

50.     Patterson, who had been working next to Shankar when Harvey called and had overheard the conversation which took place on speakerphone, agreed with Shankar that Harvey's hostility was baseless and unjustified.

51.     Vint, the practice lead and Shankar's supervisor, reviewed the slide that had led Harvey to berate and threaten her and also found it to be innocuous.

52.     Upon information and belief, Harvey also treated Patterson unfairly.

53.     Upon information and belief, Harvey and Patterson acted as co-leads of the Analytics and Data Strategy Group at Ankura.

54.     On several occasions, Patterson expressed to Shankar that she felt discriminated against by Harvey based on her gender.

55.     Specifically, Patterson told Shankar that Harvey was dismissive of her insights and contributions and would make unilateral decisions for the team without consulting with Patterson.

56.     Patterson also told Shankar that when she confronted Harvey, he would call tell her she was acting "combative."

Shankar Complains About Harvey's Discriminatory Behavior

57.     On many occasions, both before and after her promotion to Managing Director, Shankar complained to Patterson about Harvey's discriminatory behavior.

58.     Shankar often emphasized that Harvey's gratuitous hostility was routinely directed only at his female colleagues and that he seemed to have problematic relationships with female co-workers.

59.     During these conversations, Patterson emphatically agreed that Harvey's behavior was discriminatory and objectionable.

8

60.    Upon information and belief, Patterson complained to Ann Stavrovich, Senior Managing Director and "People Office" Representative, about Harvey's behavior toward herself and Shankar.

61.    On July 24, 2019, Shankar reached out to Stavrovich to seek redress regarding Harvey's discriminatory and unfair behavior.

62.    Upon information and belief, Stavrovich was already aware of Shankar's issues with Harvey, due in part to conversations Stavrovich had had with Patterson.

63.    Instead of Stavrovich responding directly to Shankar's request to redress her complaint, the People Office sent Shankar a meeting invitation for a "confidential investigation" meeting on July 29, 2019 at 11:30am.

64.    Shankar requested clarification regarding this meeting via email and Skype message but did not receive any.

65.    The following day, on July 25, 2019, after Shankar had accepted the invitation for the "confidential investigation" meeting, Stavrovich finally responded directly to Shankar's request for a meeting, stating that she was available on July 29 for the meeting Shankar had requested.

66.    When Shankar followed up by scheduling a meeting on Stavrovich's calendar for July 29 at 9am to further detail the discrimination by Harvey, she was told that despite the window of availability on Stavrovich's calendar for 9am, she would not be able to meet with Shankar until 4pm (after the "confidential investigation" meeting).

67.    Shankar's July 29 meeting with Stavrovich to discuss concerns of discrimination in the workplace originally scheduled for 9am was then pushed back to 4pm.

9

<u>Following Shankar's Complaints of Discrimination Concerning Harvey, She Is Investigated for Allegedly Discriminating Against White Men</u>

68.     On July 29, around 11:30am, Shankar attended the "confidential investigation" meeting initiated by the Company and was confronted by Ankura Legal Counsel, Michael Russano ("Russano"), and People Office Representative, Christine Cook ("Cook").

69.     To Shankar's surprise, instead of engaging in a conversation about Harvey's discriminatory behavior, Shankar was told that her own behavior was being investigated.

70.     Specifically, in a hostile and confrontational tone, Russano began asking Shankar questions concerning remarks she had made about Harvey and his treatment of others in the workplace at both Ankura and at their former employer, FTI.

71.     For example, Shankar was asked whether she had ever referred to FTI as a "boys club" and whether she had complained about Harvey to anyone at Ankura, including Patterson and Vint.

72.     Shankar confirmed that she had complained about Harvey's behavior because she believed he acted with discriminatory animus toward women in the workplace, including herself and Patterson.

73.     In response to Shankar's complaints of discriminatory behavior by Harvey, Russano advised Shankar that only she was being investigated and that Harvey's behavior and any wrongdoing by him would not be investigated.

74.     Upon information and belief, Shankar's complaints concerning discriminatory behavior by Harvey were never meaningfully investigated.

75.     Instead, Russano informed Shankar that the Company was conducting an investigation into her behavior and whether she had acted improperly, specifically concerning whether she had discriminated against white men at Ankura.

76.    Russano then proceeded to ask Shankar a series of accusatory questions concerning her project management and subordinates, suggesting that Shankar had treated her white male subordinates unfairly because of their race and gender.

77.    Shankar was taken aback by these accusations, and explained that she had mentored and supported her white, male subordinates.

78.    During Shankar's employment, she had consistently supported her white, male subordinates, recommending one white, male individual for a prestigious position on an engagement council of individuals at Ankura who were nominated to represent their office and level within the Company.

79.    Shankar supported another white, male individual by giving him several new project opportunities despite his underperformance on past projects.

80.    Russano also accused Shankar of being biased in her efforts to promote diversity initiatives at the Company.

81.    Shankar's diversity efforts at the Company included attending women's events at the firm, participating in an Ankura women's group, and encouraging the Company to hold recruitment events at historically black colleges and universities.

82.    Shankar was also vocal at the Company about the difficulty in recruiting people from more diverse backgrounds due to the lack of diversity on her team, specifically advising others at the Company that she believed the lack of representation made it difficult for more diverse candidates to see themselves working at the Company.

83.    Russano responded confrontationally and with hostility to Shankar when she explained her efforts to promote diversity at the Company and suggested that she had discriminated against the white men in the office.

84.     Although Shankar was also shocked and offended by this interrogation and the insinuations made, she spoke honestly about the value of diversity in the workforce and candidly confirmed to Russano that she had been active at the Company in promoting diversity efforts but had not treated anyone unfavorably.

85.     Shankar also emphatically advised Russano that the promotion of diversity in the workplace is not akin to discrimination against white men, but Russano was dismissive of Shankar's attempts to engage in a meaningful conversation concerning diversity.

86.     Russano also questioned and berated Shankar for providing feedback to a junior team member – a Caucasian man – based on his poor performance.

87.     The feedback that Shankar had provided to this junior team member was based on his creation and distribution of an unnecessary and unapproved analysis, effectively bypassing established review processes and failing to follow proper protocol.

88.     Shankar had also provided constructive feedback to this junior team member after he abruptly left several client meetings with senior leadership present in order to get a drink.

89.     Before providing feedback to this individual, Shankar had discussed his performance issues with Patterson, who agreed that his performance warranted the feedback that Shankar ultimately provided.

90.     However, Russano was not receptive to Shankar's explanations of the legitimate reasons for the feedback and instead used Shankar's negative feedback of this employee as proof of her alleged discriminatory bias against white men.

91.     Upon information and belief, Russano and Ankura did not accuse Caucasian employees of discrimination based on legitimate performance feedback given to their subordinates.

92.     Upon information and belief, many employees at Ankura believe that the Company's efforts to support and promote diversity within the workplace have been and are lacking.

93.     Upon information and belief, Shankar was investigated for discrimination based on her promotion of diversity efforts at the Company and the legitimate feedback given to subordinates due to her gender and race.

94.     Upon information and belief, the Company's response to Shankar's legitimate and professional behavior in the workplace was motivated by discriminatory bias based on her race and gender and retaliatory animus based on her complaints of discrimination.

95.     Upon information and belief, Russano and Ankura did not view performance criticisms by a woman of color to be valid when applied to a Caucasian man.

96.     Only after this confidential investigation meeting had concluded, and Russano and Cook had no further questions, was Shankar finally given the opportunity to meet with Stavrovich to escalate her concerns of discriminatory treatment by Harvey.

97.     Specifically, on July 29, 2019, Shankar reported to Stavrovich that Harvey had gratuitously yelled at her and then hung up the phone on her over an innocuous PowerPoint slide, that he consistently treated her with disdain and hostility, that he had actively campaigned against her promotion without legitimate reason to do so, that he had ignored her on Analytics leadership calls and skipped of her updates, and that he had omitted her from relevant emails involving client work and team management.

98.     During this meeting, Shankar explicitly stated that she believed Harvey was treating her unfairly due to her gender.

99.      Instead of being responsive to Shankar's concerns, Stavrovich firmly discouraged Shankar from filing a formal complaint and suggested that she instead take her complaints directly to Harvey.

100.     Upon information and belief, on the same day that Shankar was interviewed by the People Office, July 29, 2019, Patterson was also called into a meeting with Russano and Cook.

101.     Upon information and belief, Patterson was questioned regarding statements she had made about Harvey's behavior and her own complaints about Harvey's behavior, in addition to Shankar's efforts to promote diversity at the Company.

Ankura Abruptly Terminates Shankar's Employment

102.     On July 30, 2019, the day after Shankar was interviewed by the People Office regarding her complaints of Harvey's discriminatory behavior, her employment was abruptly terminated.

103.     On the same day, July 30, 2019, Patterson's employment was also terminated.

104.     At the time of her termination, Shankar was told only that she was being terminated for "improper comments."

105.     At the time of her termination, no substantive detail was provided to Shankar as to her alleged wrongdoing.

106.     Upon information and belief, Shankar's direct supervisors were not consulted in the termination process.

107.     Upon information and belief, the Company acted in a discriminatory and retaliatory fashion in discharging Shankar.

14

108.    There was no legitimate business reason for the termination of Shankar's employment.

109.    Upon information and belief, in contrast to the Company's aggressive and hostile treatment of Shankar based on her alleged discrimination against white men following her advocacy of diversity, Harvey was not investigated by the Company based on Shankar's complaints of his discriminatory behavior and he did not face any disciplinary measures.

110.    Upon information and belief, the Company's investigation into Shankar's behavior was motivated by discriminatory bias based on Shankar's sex and race.

111.    Upon information and belief, Shankar's sex, race, and complaints of discrimination were motivating factors in Defendant's decision to terminate her employment.

112.    As a result of Defendant's discriminatory and retaliatory termination of her employment, Shankar was denied income and benefits, continuing opportunities for promotion, advancement, recognition, and increased compensation she would have received had she not been terminated.

113.    As a result of Defendant's discriminatory and retaliatory termination of her employment, Shankar has further sustained mental and emotional harm and distress.

114.    The aforesaid acts and conduct by Defendant, its agents and employees, were performed willfully, intentionally, maliciously and with reckless indifference to Plaintiff's protected rights.

## FIRST CAUSE OF ACTION
### *Discrimination on the Basis of Plaintiff's Sex Pursuant to Title VII*

115.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

116.     As a result of Defendant's aforesaid acts, Defendant discriminated against Plaintiff on account of her sex in violation of Title VII of the Civil Rights Act as amended, 42 U.S.C. § 2000e-2(a), when Defendant terminated her employment.

117.     As a result of Defendant's discriminatory and adverse acts, Plaintiff suffered damage, including without limitation, termination, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to reputation and career.

## SECOND CAUSE OF ACTION
### *Discrimination on the Basis of Plaintiff's Sex Pursuant to NYCHRL*

118.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

119.     As a result of Defendant's aforesaid acts, Defendant discriminated against Plaintiff on account of her sex in violation of the New York City Administrative Code § 8-107, when Defendant terminated her employment.

120.     As a result of Defendant's discriminatory and adverse acts, Plaintiff suffered damage, including without limitation, termination, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to reputation and career.

## THIRD CAUSE OF ACTION
### *Discrimination on the Basis of Plaintiff's Sex Pursuant to New York Executive Law*

121.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

122.     As a result of Defendant's aforesaid acts, Defendant has discriminated against Plaintiff on account of her sex in violation of New York Executive Law § 296(1)(a).

16

123.    As a result of Defendant's discriminatory and adverse acts, Plaintiff suffered

damage, including without limitation, deprivation of income and benefits, loss of employment

opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of

enjoyment of life and damage to reputation and career.

## FOURTH CAUSE OF ACTION
### *Discrimination on the Basis of Plaintiff's Race Pursuant to NYCHRL*

124.    Plaintiff repeats and realleges each and every allegation contained in the

preceding paragraphs as if fully set forth herein.

125.    As a result of Defendant's aforesaid acts, Defendant discriminated against

Plaintiff on account of her race in violation of the New York City Administrative Code § 8-107,

when Defendant terminated her employment.

126.    As a result of Defendant's discriminatory and adverse acts, Plaintiff suffered

damage, including without limitation, termination, deprivation of income and benefits, loss of

employment opportunities, emotional pain, suffering, inconvenience, mental anguish,

humiliation, loss of enjoyment of life and damage to reputation and career.

## FIFTH CAUSE OF ACTION
### *Discrimination on the Basis of Plaintiff's Race Pursuant to New York Executive Law*

127.    Plaintiff repeats and realleges each and every allegation contained in the

preceding paragraphs as if fully set forth herein.

128.    As a result of Defendant's aforesaid acts, Defendant has discriminated against

Plaintiff on account of her race in violation of New York Executive Law § 296(1)(a).

129.    As a result of Defendant's discriminatory and adverse acts, Plaintiff suffered

damage, including without limitation, deprivation of income and benefits, loss of employment

opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to reputation and career.

## SIXTH CAUSE OF ACTION
### *Retaliation for Opposing Discrimination Pursuant to Title VII*

130.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

131.     As a result of Defendant's aforesaid acts, Defendant retaliated against Plaintiff for making reasonable, good-faith complaints of discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. when Defendant terminated Plaintiff's employment.

132.     As a result of Defendant's retaliation against her, Plaintiff suffered damage, including without limitation, termination, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to reputation and career.

## SEVENTH CAUSE OF ACTION
### *Retaliation for Opposing Discrimination Pursuant to NYCHRL*

133.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

134.     As a result of the aforementioned actions, Defendant retaliated against plaintiff in violation of the New York City Administrative Code § 8-101 et seq. when Defendant terminated plaintiff's employment in retaliation for plaintiff's opposition to discriminatory treatment.

135.     As a result of Defendant's retaliatory acts, Plaintiff has suffered damage, including without limitation, termination, deprivation of income and benefits, loss of

employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to reputation and career.

## EIGHTH CAUSE OF ACTION
### *Retaliation for Opposing Discrimination Pursuant to New York Executive Law*

136.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

137.    As a result of Defendant's aforesaid acts, Defendant retaliated against Plaintiff for opposing the discriminatory practices of Ankura in violation of the New York Executive Law § 296(7).

138.    As a result of Defendant's retaliation against her, Plaintiff suffered damage, including without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to reputation and career.

## JURY DEMAND

139.    Plaintiffs hereby demands trial by jury.

**WHEREFORE,** Plaintiff respectfully requests that the Court grant judgment for Plaintiff and that it order and award Plaintiff the following relief against Defendants:

(1)    A declaratory judgment that the acts, policies, practices, and procedures complained of herein violated Plaintiff's rights as secured by the New York City Administrative Code, § 8-101 et seq., Title VII, 42 U.S.C. § 2000, et seq. and the New York Executive Law, § 290 et seq.;

(2)    An injunction restraining and enjoining defendant from engaging in further discriminatory acts;

(3)     Reinstatement to the highest position to which Plaintiff was and would be entitled with salary, benefits, job responsibilities and other terms of employment commensurate with such position, and/or front pay;

(4)     Actual damages in the form of (a) back pay with interest based on Plaintiff's appropriate compensation had she not been wrongfully terminated; (b) reimbursement for lost bonuses, stock, health benefits, 401K contributions, social security, experience, training opportunities, and other benefits; in an amount to be proved at trial;

(5)     Compensatory damages for emotional pain and suffering, inconvenience, mental anguish, humiliation, and loss of reputation in an amount to be proved at trial, but believed to exceed $150,000;

(6)     Punitive damages in an amount to be determined at trial;

(7)     Attorneys' fees, costs and disbursements;

(8)     Interest; and

(9)     Such additional relief to Plaintiff as the Court deems just and proper.

Dated: September 11, 2020
       New York, New York

                              BANTLE & LEVY LLP

                              */s/ Sherie N. Buell*
                              Sherie N. Buell
                              Lee F. Bantle
                              99 Park Avenue, Suite 1510
                              New York, NY 10016
                              (212) 228-9666
                              *Attorneys for Plaintiff*