USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: \_\_\_8/11/2021\_\_\_\_\_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
ANITA SHANKAR,

                                Plaintiff,

            -against-

ANKURA CONSULTING GROUP, LLC,

                               Defendant.

------------------------------------------------------------------- x

1:20-CV-07463-ALC

<u>Opinion and Order</u>

**ANDREW L. CARTER, JR., United States District Judge:**

      Plaintiff Anita Shankar ("Plaintiff" or "Shankar"), a South Asian American woman and resident of New York, brings this action for race discrimination and sex discrimination and retaliation in violation of Title VII, the New York State Human Rights Law, and the New York City Human Rights Law, against Defendant Ankura Consulting Group, LLC ("Defendant" or "Ankura"), a professional services firm specializing in reactive event-based consulting services. Defendant Ankura moves for partial dismissal of this action, arguing that Shankar's race discrimination claims under the New York human rights laws fail to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant also moves to strike paragraphs 22 to 35 from the Complaint under Rule 12(f), contending that those allegations are untimely and immaterial. For the reasons explained in full below, the partial motion to dismiss is **GRANTED** and the motion to strike is **DENIED**.

### I. BACKGROUND

    **A. Factual Background**

<u>Chris Harvey's Behavior at FTI Consulting ("FTI")</u>

1

Shankar joined FTI Consulting in 2014. However, she left in 2016 after a fellow team member, Chris Harvey ("Harvey"), subjected her and other female employees to unfair gender-based mistreatment during her time there. She accuses Harvey of "often being dismissive of her work, minimizing her efforts, and denying her meaningful and substantive supervision" compared to male counterparts and "foster[ing] a misogynistic culture at FTI in which female employees were often excluded [and] treat[ed] . . . with disrespect." Compl. ¶¶ 27–28. She further alleges that Harvey engaged in "inappropriate workplace conversation focusing on other women's bodies" in front of her, *see id.* ¶¶ 29, and once excluded her from a teamwide golf outing when she was the only woman on the team. *Id.* ¶¶ 31. In 2016, Shankar left FTI "in large part" because of "Harvey's discriminatory behavior." *Id.* ¶¶ 34. She believes Harvey also left FTI in 2016. *Id.* ¶¶ 25.

Shankar Joins Ankura after Acquisition of Navigant Consulting, Inc.

After departing FTI, Shankar began working as a Managing Consultant at Navigant Consulting, Inc. ("Navigant"), as she believed Navigant to be "a more inclusive workplace." *Id.* ¶¶ 34. While there, she consistently received positive feedback from her supervisors in performing her duties—project and performance management, training, recruiting, and coaching. *Id.* ¶¶ 14–16. After six months with Navigant due to her strong performance, she was promoted to Associate Director. *Id.* ¶¶ 17. In 2018, Ankura acquired the Navigant segment that Shankar worked in—Disputes, Forensics, and Legal Technology ("DFLT")—and upon officially joining Ankura, her title changed to Senior Director. *Id.* ¶¶ 18–20.

Shankar Expresses Concerns to Ankura Supervisors about Her History with Harvey

"At the time of the [a]cquisition," Shankar shared concerns with her direct supervisors at Ankura about "working under" Harvey, whose job title at Ankura at the time was Senior

Managing Director. *Id.* ¶¶ 22. In particular, she spoke to Rebecca Patterson, Managing Director ("Patterson"), and Jim Vint, Senior Managing Director and Practice Lead ("Vint"), about "her professional history with Harvey" at FTI. *Id.* ¶¶ 26. Patterson's role also entailed co-leading the Analytics and Data Strategy Group with Harvey. *Id.* ¶¶ 53. After Shankar expressed her concerns, Patterson and Vint had lunch with her, "reassur[ing] her that she was a valuable asset to Ankura and that her contact with Harvey would be limited." *Id.* ¶¶ 35. Despite her concerns about working under Harvey, Shankar continued to perform well and was promoted to Managing Director on March 1, 2019. *Id.* ¶¶ 36–38.

Harvey's Behavior Toward Shankar and Patterson at Ankura

On or about February 2019, Shankar learned that Harvey had carried out a "discriminatory campaign" to solicit criticism about her to impede her promotion. *Id.* ¶¶ 40–43. After she got promoted, Harvey began to subject her, as well as Patterson—who often praised Shankar's contributions to the company—to unfair treatment due to their gender. She believes Harvey intentionally excluded her from relevant work e-mails and meetings, *see id.* ¶¶ 45–46, participation in weekly leadership calls, *see id.* ¶¶ 47, and, in one instance, called and "berated her" over the phone about an "innocuous slide about summer interns" in a PowerPoint presentation. *Id.* ¶¶ 48. On that call, he threatened to report Shankar and hung up the phone on her. *Id.* ¶¶ 49. Both Patterson and Vint believed the slide to be innocuous. *Id.* ¶¶ 50–51.

In addition to Shankar, Harvey also directed hostility toward Patterson, who also co-led Ankura's Analytics and Data Strategy Group with him. She expressed to Shankar that he discriminated against her due to her gender "on several occasions," to include being "dismissive of her insights and contributions," "mak[ing] unilateral decisions for the team without consulting [her]," and calling her "combative" whenever she confronted him. *Id.* ¶¶ 54–56.

Shankar Complains to Ankura about Harvey's Behavior

On July 24, 2019, Shankar contacted Ann Stavrovich, Senior Managing Director and People Office Representative, to raise concerns about Harvey's hostile behavior toward her. *Id.* ¶¶ 61. At that point, however, Stavrovich was familiar with Harvey's behavior because Patterson had previously complained to her about him. *Id.* ¶¶ 58–60. The People Office did not respond directly to Shankar's request for a meeting about Harvey ("Stavrovich Meeting") and, instead, scheduled a "confidential investigation" meeting for July 29, 2019 with Shankar. *Id.* ¶¶ 63. On July 25, 2019, Stavrovich informed Shankar that she could hold the meeting Shankar originally requested on the same day—July 29, 2019—but insisted that the "confidential investigation" meeting take place first. *Id.* ¶¶ 65–67. The Stavrovich Meeting was scheduled for 4pm. *Id.* ¶¶ 67.

The July 29, 2019 Morning: "Confidential Investigation" Meeting

On the morning of July 29, 2019, Shankar attended the "confidential investigation" meeting with Ankura Legal Counsel, Michael Russano ("Russano"), and People Office Representative, Christine Cook ("Cook"), during which she learned Ankura was investigating her for discriminating against white men, including Harvey, and that Harvey would not be investigated. *Id.* ¶¶ 73–75, 83. Russano questioned her about "concerning remarks she made about Harvey and his treatment of others . . . at both Ankura and . . . FTI," *id.* ¶¶ 70, her unfair treatment of white male subordinates due to their race and gender, *id.* ¶¶ 76, and her biased efforts at promoting diversity at the company. *Id.* ¶¶ 80. Shankar insisted that she had supported her white male subordinates, including recommending one for a "prestigious position" within the company. *Id.* ¶¶ 78–79. She "was also vocal" about the lack of diversity on her team, encouraged recruitment events at historically black colleges and universities, and attended women's events at the firm. *Id.* ¶¶ 81–82. Shankar told Russano that despite being vocal about diversity efforts, she

4

did not treat white men in the office unfairly and that such efforts were "not akin to discrimination against white men." *Id.* ¶¶ 84–85. Russano was not receptive to said comments from Shankar. *Id.* ¶¶ 85. Finally, she contested Russano's contention that her negative performance feedback toward a junior Caucasian team member demonstrated her discriminatory bias toward white men. *Id.* ¶¶ 87–90. Shankar does not believe that Ankura had accused Caucasian employees—who had provided negative feedback to their subordinates—of race or gender discrimination and that Ankura "did not view performance criticisms by a woman of color to be valid when applied to a Caucasian man." *Id.* ¶¶ 94–95.

The July 29, 2019 Afternoon: Stavrovich Meeting

Later that day, after the "confidential investigation" meeting ended, Shankar met with Stavrovich. She reported to Stavrovich that Harvey "gratuitously yelled at her and then hung up the phone on her over an innocuous PowerPoint slide, that he consistently treated her with disdain and hostility, that he had actively campaigned against her promotion without legitimate reason to do so, that he had ignored her on Analytics leadership calls and skipped of her updates, and that he had omitted her from relevant emails involving client work and team management." *Id.* ¶¶ 97–98. Stavrovich encouraged Shankar to raise her concerns directly with Harvey, as opposed to filing a formal complaint. *Id.* ¶¶ 99. On the same day, Patterson was also interviewed by Russano and Cook about her own complaints about Harvey's behavior, as well as Shankar's efforts to promote diversity at the company. *Id.* ¶¶ 100–01.

The July 30, 2019 Termination

On July 30, 2019, the day immediately after their meetings with Russano and Cook, Ankura terminated both Shankar and Patterson. Ankura did not provide any reason beyond "improper comments" to explain the termination. *Id.* ¶¶ 104–05. Shankar believes her direct

supervisors were not consulted during the termination process, that Ankura provided no legitimate business reason for her termination, and that Ankura had a discriminatory and retaliatory motive for terminating her based on her race and sex. *Id.* ¶¶ 106–08, 111. Shankar alleges that, because of her termination, she was denied compensation, benefits, recognition, promotion opportunities, and suffered mental and emotional harm. *Id.* ¶¶ 112–13.

### B. Procedural History

Shankar filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") for sex and retaliation and a notification of right to sue issued on June 15, 2020. *Id.* ¶¶ 6. On September 11, 2020, Shankar filed the instant complaint seeking relief for discrimination based on sex and retaliation in violation of Title VII, the NYSHRL, and the NYCHRL (Counts I-III, VI-VIII); and discrimination based on race in violation of the NYSHRL and NYCHRL (Counts IV & V) against Defendant Ankura. ECF No. 1.

On November 13, 2020, Defendant Ankura filed a partial motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim of race discrimination under the NYSHRL and NYCHRL (Counts IV & V). ECF No. 13–14.[1] Ankura also moved to strike, or alternatively to dismiss, time-barred or otherwise immaterial allegations from the Complaint. *Id.* Shankar opposed this motion on December 25, 2020. ECF No. 17. On January 7, 2021, Ankura replied. ECF No. 18. The Court considers the partial motion to dismiss and motion to strike fully briefed.

## II. APPLICABLE LEGAL STANDARDS

---

[1] Defendant moves to dismiss any hostile work environment claim based on race pursuant to the New York human rights laws. Def.'s Mot. at 11–14. But the Complaint does not expressly raise a hostile work environment claim for race discrimination. Additionally, Plaintiff's opposition to the partial motion to dismiss expressly relies on "unfavorable treatment" and "the sequence of events leading to her discharge"—not a racially hostile work environment—as circumstances supporting an inference of race discrimination. Pl.'s Opp. at 10. And, finally, Plaintiff's opposition explicitly states that she does not allege a hostile work environment based on race under the New York human rights laws. *Id.* at 15 n.3. Accordingly, the Court will not address whether a hostile work environment claim based on race under the NYSHRL and NYCHRL would survive dismissal.

### A. Motion to Dismiss

On a Rule 12(b)(6) motion, the court must "assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Allegations that are "no more than conclusions[] are not entitled to the assumption of truth," and "'naked assertion[s]' devoid of 'further factual enhancement'" or "the defendant-unlawfully-harmed-me accusation[s]" are not sufficient to show that a plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 678-79 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 557 (2007)). Nor must a court accept as true "legal conclusions" or "a legal conclusion couched as a factual allegation." *Id.* "We include in this analysis not only the assertions made within the four corners of the complaint itself, but also those contained in documents attached to the pleadings or in documents incorporated by reference." *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (citing *Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir. 1998); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

### B. Motion to Strike Allegations in the Complaint

Under Rule 12(f) of the Federal Rules of Civil Procedure, "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." The motion must "state with particularity the grounds for seeking the order." Fed. R. Civ. P. 7(b)(1); *see, e.g.*, *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 579 (2d Cir.1969) ("[T]he motion to strike was much too general in that it did not specify which parts of the . . . affidavit should be stricken and why . . . . [T]he motion to strike must be precise."). To prevail on a [Rule 12(f)] motion to strike, a party must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3)

7

that to permit the allegations to stand would result in prejudice to the movant." *Acco, Ltd. v. Rich Kids Jean Corp.*, No. 15 CIV. 7425 (JSR), 2016 WL 3144053, at *1 (S.D.N.Y. Apr. 11, 2016) (collecting cases). "[C]ourts should not tamper with the pleadings unless there is a strong reason for so doing." *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976); *see also Arias-Zeballos v. Tan*, No. 06 CIV. 1268 (GEL), 2006 WL 3075528, at *9 (S.D.N.Y. Oct. 26, 2006) (describing motions to strike as "generally disfavored").

### III. DISCUSSION

**A. New York State Human Rights Law (NYSHRL)**

Under the NYSHRL, "[t]o survive a motion to dismiss, a plaintiff need only establish 'a prima facie case of discrimination by demonstrating that (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.'" *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) (alterations omitted); *Cf. Burgos v. City of New York*, No. 18-CV-1150 (JPO), 2019 WL 1299461, at *5–6 (S.D.N.Y. Mar. 21, 2019) (explaining that Title VII and the NYSHRL apply the same standard). "[T]he plaintiff does not need substantial evidence of discriminatory intent." *Littlejohn v. City of New York,* 795 F.3d 297, 311 (2d Cir. 2015). "At the pleadings stage, then, a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (citing *Littlejohn,* 795 F.3d at 310)).

The Parties do not dispute that Shankar has met the first three requirements for demonstrating a prima facie case: that she is a member of a protected class, was qualified for the

position, and suffered an adverse employment action. However, on the fourth prong, Defendant contends that the Complaint fails to allege a causal connection between the adverse action (termination) and a racially discriminatory motive. In other words, as pleaded, the factual allegations fail to demonstrate that Ankura terminated her *because of* her race. The Court agrees: the Complaint does not meet its minimal burden of showing plausible support that racial discrimination was a motivating factor in Shankar's termination.

Absent direct evidence of discriminatory intent, a plaintiff may demonstrate discriminatory intent indirectly by showing circumstances giving rise to an inference of discrimination. *See, e.g., Tolbert v. Smith,* 790 F.3d 427, 436–37 (2d Cir. 2015). To establish an inference of discrimination, "[a] plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Mandell v. City of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks omitted). As described by the Second Circuit in *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 228–31 (2d Cir. 2014) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39–40 (2d Cir. 2000)):

> What will constitute "all material respects" will vary from case to case, of course. We have said that the judgment rests on "whether the plaintiff and those [she] maintains were similarly situated were subject to the same workplace standards." The plaintiff's and comparator's circumstances must bear a "reasonably close resemblance," but need not be "identical." Ordinarily, "[w]hether two employees are similarly situated . . . presents a question of fact," rather than a legal question to be resolved on a motion to dismiss." *Id.* (citations omitted).

Even at this early stage in the litigation, the factual allegations—taken as true and drawing all reasonable inferences in Shankar's favor—fail to give rise to an inference of racial discrimination. The Parties dispute whether the Complaint plausibly alleges (1) that she was treated less favorably than Harvey and other Caucasian employees of a race outside of her protected group, and (2) that the sequence of events leading up to her termination—including the

confidential investigation meeting with Russano and Cook—demonstrate a discriminatory motive. The Court dismisses the race discrimination claim under the NYSHRL as Shankar has not met the minimal pleading burden to show an inference of discrimination.

Shankar fails to adequately plead that Harvey's more favorable treatment was because of her race. It is not clear from the face of the Complaint that Harvey and Shankar are similarly situated, so any race discrimination claim for disparate treatment relying on Harvey as comparator is without merit. Not only is he her supervisor but they also have distinct duties and responsibilities, and there are no other allegations that they were "subject to the same workplace standards." *Graham*, 230 F.3d at 40. Moreover, the Complaint contains general assertions that other Caucasian employees are better treated than Shankar, without any factual support about whether those employees are similarly situated.

Shankar argues that the sequence of events leading up to her termination establishes the requisite minimal inference of discrimination. But it does not. The Complaint alleges that the goal of the confidential meeting was to investigate allegations that Shankar discriminated against white men at Ankura. Viewing the facts in a light most favorable to Shankar, it is only possible at this point, not plausible, that Ankura terminated her because she is a member of a different race from Harvey. Though the confidential investigation involved accusations of racism by Shankar, that alone does not lead this Court to conclude that Ankura acted with any discriminatory motive based on her South Asian race. Without more, Shankar has failed to demonstrate a minimally plausible inference of discrimination.

Shankar's attempt to state a race discrimination claim would bode much better if the Complaint contained allegations tying Shankar's South Asian racial background to her termination. In *Vega*, after dismissing his other discrimination claims based on ethnicity,

concluded that a school district had taken an adverse employment action (excessive workload) against him (a Hispanic employee) because of his ethnicity. 801 F.3d at 88–90. The Complaint contained allegations that the employer forced him to spend more time preparing for his classes without additional compensation because of his Hispanic ethnicity where they assigned him "a large percentage of Spanish-speaking students because he [was] Hispanic and bilingual, while his similarly-situated co-workers were not assigned additional work." *Id.* at 88. The *Vega* court also relied on the relevant background facts that the school district "placed a 'University of Puerto Rico' banner outside his classroom and attempted to transfer him to a Hispanic principal's school" because those actions were "plausibly connected" to his Hispanic background. *Id.* at 88–89.

Unlike the plaintiff in *Vega*, Shankar does not allege any facts, background or otherwise, that her South Asian race played any specific role in her termination. *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile work environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of [a] protected characteristic."); *Burgos*, 2019 WL 1299461 at *5–7 ("No facts alleged in the Complaint connect the Department's treatment of [Plaintiff] to his status as a member of protected racial or religious groups . . . . [n]or has [Plaintiff] pointed to statements made by or actions taken by his supervisors or co-workers evincing an awareness of his race or religion, or other background evidence that could create a context permitting an inference of discrimination."); *Jackson v. NYS Dep't of Lab.*, 709 F. Supp. 2d 218, 227 (S.D.N.Y. 2010) ("[Plaintiff] makes no allegations to support her [disparate treatment] claim, including any facts

identifying her race or religion, except that 'she was transferred to an undesirable work reassignment.'").

Moreover, Shankar does not plead other kinds of circumstances that typically lead to a minimal inference of discrimination. For instance, the Complaint does not allege that any other South Asian employees were terminated nor does she adequately allege Ankura's "criticism of [her] performance in ethnically degrading terms . . . [or] its invidious comments about others in [her] protected group." *Leibowitz v. Cornell Univ.,* 584 F.3d 487, 502 (2d Cir.2009) (internal quotation marks omitted), *superseded by statute on other grounds*. And, finally, the Complaint contains no allegations that, after her termination, Ankura replaced her with "an individual outside [her] protected class." *Littlejohn*, 795 F.3d at 312–13 (citing *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 135 (2d Cir.2000)).

Absent sufficient allegations demonstrating a plausible inference of discrimination, Shankar has not satisfied a key element of her race discrimination claim under the NYSHRL. It is well-settled in this Circuit that "discrimination must be *because of* [a protected characteristic]." *Patane v. Clark,* 508 F.3d 106, 112 (2d Cir. 2007) (internal quotation marks omitted). For the foregoing reasons, the Court concludes that, even at this early stage in the litigation, the NYSHRL claim must be dismissed.

**B. New York City Human Rights Law (NYCHRL)**

"[C]ourts must analyze NYCHRL claims independently from any federal and state law claims." *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). "The NYCHRL creates a lower threshold for actionable conduct and must be construed liberally in favor of discrimination plaintiffs, meaning that a defendant may be liable under the NYCHRL but not under state or federal statutes." *Cain v. Esthetique*,

182 F.Supp.3d 54, 71 (S.D.N.Y. 2016). To prevail on a disparate treatment claim, a plaintiff must show only that she was treated "less well, at least in part for a discriminatory reason." *Benzinger v. Lukoil Pan Americas, LLC*, 447 F.Supp.3d 99, 123 (S.D.N.Y. 2020) (quoting *Mihalik,* 715 F.3d at 110 n.8). "The plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive . . . . [s]he must show that she has been treated less well at least in part '*because of* her'" race. *Mihalik*, 715 F.3d at 110. NYCHRL claims are entitled to "an independent liberal construction analysis in all circumstances." *Loeffler*, 582 F.3d at 278.

Though this Court analyzes Shankar's NYCHRL and NYSHRL claims separately, even when liberally construed and for similar reasons stated above, her race discrimination claim under the NYCHRL lacks sufficient factual content to plead that Ankura terminated her because of her race. The Complaint relies on conclusory statements that she was treated less well than Harvey and other Caucasian employees, but she has not met her burden of showing that the differential treatment was "caused by a [racially] discriminatory motive." As such, her race discrimination claim under the NYCHRL is also dismissed.

**C. Whether to Strike Paragraphs 22 to 35 from the Complaint**

Ankura argues that alleged incidents at FTI, occurring between 2014 and 2016, are not actionable because they are time-barred under the NYSHRL and the NYCHRL and should therefore be stricken as immaterial. While Shankar concedes that those incidents are untimely to the extent that they would form the basis of claims against FTI—which may explain why FTI is not a named defendant in this case—she contends that the allegations should not be stricken because they provide relevant background for her discrimination and retaliation claims against Ankura. Pl.'s Opp. at 7–8 (acknowledging that "both in the complaint and in Plaintiff's pre-

13

motion response letter that these allegations should not be considered discrete adverse actions forming the basis of a claim"). The Court agrees and declines to strike the allegations set forth in paragraphs 22 to 35 from the Complaint.

At this preliminary stage in the case, the Court does not have a strong reason to tamper with the Complaint by striking the disputed paragraphs. *Lipsky*, 551 F.2d at 893. It is too early in the litigation for anyone, including Ankura, to know whether the disputed allegations would be admissible at trial or would have absolutely no bearing on the issues in the case. *Id.* ("Evidentiary questions . . . should especially be avoided at such a preliminary stage of the proceedings. Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided. And ordinarily a [court] should [not] decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone.") (citing cases); *see also Garcia v. Ct. Emp. Project (Cases)*, No. 95 CIV. 2623 (CSH), 1995 WL 422266, at *2 (S.D.N.Y. July 17, 1995) (refusing to strike allegations that are "*potentially* relevant" to plaintiff's claim of discriminatory termination) (emphasis in original).

Even further, the allegations set forth in paragraphs 22 to 35 are not irrelevant and "provide a better understanding of the claim for relief by providing background facts and thus are proper." *Gierlinger v. Town of Brant*, No. 13-CV-00370 AM, 2015 WL 3441125, at *1 (W.D.N.Y. May 28, 2015) **(**quoting *Hoffman Motors Corp. v. Alfa Romeo S.p.A.,* 244 F.Supp. 70, 81–82 (S.D.N.Y.1965)). Shankar told Patterson, Vint, and Stavrovich her history with Harvey at FTI, and that history was also one of the subjects discussed at the confidential investigation meeting. At this early stage in the case, the disputed allegations may be treated as relevant background facts for Shankar's claims. "Matters should be stricken on the basis of

impertinence only where the allegation bears no possible relation whatsoever to the subject matter of the litigation." *AdvanceMe, Inc. v. Lenders Int'l*, No. 11 CV 3624 VB, 2011 WL 6425488, at *2 (S.D.N.Y. Dec. 19, 2011) (quoting *Wahlstrom v. Metro–North Commuter R.R. Co.,* No. 96-CV-3589 (PKL), 1996 WL 684211, at *2 (S.D.N.Y. Nov. 25, 1996). The Court is also not convinced that Ankura will suffer any prejudice if the disputed allegations remain in the Complaint. Finding no strong reason to tamper with the Complaint at this stage, the Court denies Ankura's motion to strike paragraphs 22 to 35.

## IV. CONCLUSION

For the above-stated reasons, Defendant Ankura's partial motion to dismiss is hereby **GRANTED**. However, its motion to strike is hereby **DENIED**. The Court hereby **GRANTS** Plaintiff Shankar leave to replead for the limited purpose of amending the Complaint to satisfy her minimal burden of pleading an inference of discrimination based on race under the NYSHRL and NYCHRL, if she so wishes. The Parties are directed to file a joint status report outlining how they would like to proceed with this case within 14 days of the date this Opinion and Order is issued.

**SO ORDERED.**

**Dated:** August 11, 2021
New York, New York

_____
The Hon. Andrew L. Carter, Jr.
United States District Judge